UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLA L. MARIN,

                                    Plaintiff,

     v.

TOWN OF SOUTHEAST,

                                    Defendant.

No. 14-CV-2094 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances</u>:

Stephen Bergstein, Esq.
Bergstein & Ulrich, LLP
Chester, NY
*Counsel for Plaintiff*

James A. Randazzo, Esq.
Denise M. Cossu, Esq.
Gaines, Novick, Ponzini, Cossu & Venditti, LLP
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

     Plaintiff Carla Marin ("Plaintiff"), brings this Action against Defendant Town of

Southeast ("Defendant" or "Town"), challenging the constitutionality of certain Town sign

ordinances on First Amendment grounds.  Plaintiff moves for summary judgment "on the

constitutionality of [D]efendant's sign laws from 2011 and 2013 as well as the current ordinance,

revised in 2014," to the extent that they regulate political campaign signs, on First Amendment

grounds.  (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") 1 (Dkt. No. 45).)

Plaintiff "also seeks to enjoin enforcement of the 2014 ordinance."  (*Id.*)  Defendant cross-moves

for summary judgment on all of Plaintiff's claims.  For the forgoing reasons, Plaintiff's Motion

is granted, and Defendant's Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

Plaintiff is an attorney who lives in Carmel, NY, and owns property at 420–422 State Route 312 in Southeast, NY.  (Pl.'s Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl.'s 56.1") ¶¶ 1–2 (Dkt. No. 44).)[1]  She avers that she is a member of the Putnam County Republican Committee, is "active in local politics," has posted signs on her property in support of Republican candidates, and desires to do so in the future.  (Id. ¶¶ 3–5; Pl.'s Aff. in Supp. of Mot. for Summ. J. ("Pl.'s Aff.") ¶ 2. (Dkt. No. 42).)

In 2004, the Town added a provision to Chapter 138 (Zoning) of the Code of the Town of Southeast (generally, the "Code"), exempting political signs from standard permit requirements, provided that their placement did not exceed 21 days, and that they were not posted "within the public rights-of-way."  (Pl.'s 56.1 ¶¶ 6–7; Def. Town of Southeast's Rule 56.1 Statement ("Def.'s 56.1") ¶ 8 (Dkt. No. 49).)  On June 23, 2011, the Town amended the Code (the "2011 Law") to further restrict the posting of political signs such that, to be exempted form permitting requirements, they could be posted no more than 21 days prior to the "event or proposition being advertised," had to be "removed not more than five . . . days after such event has concluded," and could not "be placed within the public rights-of-way."  (Pl.'s 56.1 ¶¶ 8–9 (internal quotation marks omitted); see also Aff'n of Stephen Bergstein in Supp. Of Pl.'s Mot. for Summ. J. ("Bergstein Aff'n") Ex. 1 ("2011 Law") (Southeast, N.Y., Town Code, ch. 138, art. XII (2008)) § 138–75(A)(16); id. Ex. 2 (providing text of 2011 amendment) (Dkt. No. 43).)  The 2011 Law

---

[1] The facts in this section are derived from the undisputed portions of the Parties' 56.1 Statements, or the Court's reading of the text of the relevant laws themselves.

did not place durational limitations on several other types of signs and markers, including historical markers, flags, directional signs, and temporary signs for roadside stands, and placed less stringent durational restrictions on temporary "for sale" signs, temporary directions signs, real estate development signs, and other similar signs.  (Pl.'s 56.1 ¶¶ 9–11; 2011 Law § 138-75(A).)

On September 22, 2011, Town prosecutors charged Plaintiff in Southeast Town Court with violating the 2011 Law, alleging that Plaintiff had "posted a temporary political sign on her property more than five consecutive days after a political primary" and "in the Town right-of-way."  (*Id.* ¶¶ 12, 14–15; *see also* Def.'s 56.1 ¶ 17; Decl. in Supp. of Def.'s Cross-Mot. and in Opp'n to Pl.'s Mot. ("Def.'s Decl.") Ex. C (charging instrument) (Dkt. No. 47).)  Plaintiff was offered, but refused, an adjournment in contemplation of dismissal ("ACD"), choosing instead to move to dismiss the complaint in that action.  (Def.'s 56.1 ¶¶ 18–19.)  On June 1, 2013, Town Justice Gregory L. Folchetti ("Justice Folchetti") dismissed Defendant's complaint "in the interests of justice," (Pl.'s 56.1 ¶ 18), pursuant to New York Criminal Procedure Law § 170.40, finding that the violation was of "'relatively minimal seriousness'" such that "'there would be little, if any legitimate purpose for imposing sentence . . . if [Plaintiff] were actually to be convicted,'" (Def's 56.1 ¶¶ 21–26 (quoting Def.'s Decl. Ex. E (Justice Folchetti Decision)).)  Plaintiff avers that, since this time, she has "refrained from posting campaign signs at her property" for fear that she would be charged with violating the relevant provisions of the Code.  (Pl.'s 56.1 ¶¶ 16–17, 25–26; *see also* Pl.'s Aff. ¶¶ 5–6.)  Plaintiff also claims that she does not otherwise have the resources to support political candidates in any other way, aside from volunteering her time.  (Pl.'s Aff. ¶ 2.)

3

In January 2013, via Local Law No. 2 of 2013, the Town amended the Code to further restrict political signs such that, to be exempt from permitting requirements, there could be "no more than one sign per event or candidate . . . per parcel," and such signs had to be "no less than 15 feet from the edge of the pavement and/or roadbed."  (Pl.'s 56.1 ¶¶ 19–21 (internal quotation marks omitted); Bergstein Aff'n Exs. 5–7 (collectively, the "2013 Law") (Southeast, N.Y., Town Code, ch. 138, art. XII (2013)) § 138-75(A)(16); *see also id.* Exs. 5–6 (providing text of January 2013 amendment).)  The stated purpose of the amendment was to "promote and protect the health, welfare, and safety and the community character of the Town of Southeast," to "protect property values, create a more attractive economic and business climate, . . . preserve the scenic and natural landscape," and to "reduce . . . distractions . . . obstructions[,]" and "hazards."  (2013 Law § 138–72(A)).)  In March of that same year, the Town also amended the Code (creating the "2013 Law") via Local Law No. 4 of 2013, refining the temporal restriction on political signs to provide that such signs "shall not be placed more than 21 days prior to the primary, general[,] or special election or referendum or other event or proposition being advertised and shall be removed not more than five (5) days after such event has been held or concluded."  (Pl.'s 56.1 ¶ 22; Bergstein Aff'n Ex. 7 (providing text of March 2013 amendment).)  As with prior versions of the Code, the 2013 Law did not place all of the same restrictions on—or, in some cases, completely exempted from restrictions—several other types of signs and markers, including historical markers, flags, directional signs, temporary signs for roadside stands, garage sales, private auctions, holiday decorations, and other similar signs.  (Pl.'s 56.1 ¶ 23; 2013 Law § 138-75(A)).)  Moreover, Plaintiff avers that, after passage of the 2013 Law, she refrained from

4

posting political signs for the 2013 and 2014 elections, for fear of prosecution.  (Pl.'s 56.1

¶¶ 25–26; Pl.'s Aff. ¶¶ 8–10.)

On October 23 2014, via Local Law 2 of 2014, the Town again amended the Code (the

"2014 Law") to, outside the context of permitting requirements, generally restrict all

"[t]emporary signs," defined as "any sign intended to be displayed for a limited time and capable

of being viewed from any public right of way, parking area[,] or neighboring property" and "for

a single activity or event."  Southeast, N.Y., Town Code, ch. 138, art. XII ("2014 Law")

§ 138-73 (defining temporary sign).  (Def.'s 56.1 ¶ 39; *see also* Bergstein Aff'n Ex. 9 (providing

text of 2014 amendment).[2]  Restrictions on temporary signs include that they

> (a) shall not be placed in a public right of way (Placement of a temporary sign shall
>     not be less than (15) feet from the edge of a curb, paved or unpaved roadway,
>     and/or the private property tax parcel lot line, whichever is less).
> (b) shall not be placed on any business, industrial or residential private property tax parcel
>     more than (21) days prior to a scheduled activity or event nor more than (5) days after
>     the scheduled activity or event.
> (c) shall not be attached to fences, trees, utility poles, rocks[,] or other parts of a natural
>     landscape, nor shall they be placed in a position that will obstruct or impair in any
>     manner, or create a hazard or disturbance to the health, safety[,] and welfare of the
>     general public.

2014 Law §§ 138-75(C)(2), (8).  (*See also* Def.'s 56.1 ¶¶ 40–42.)  The 2014 Law also

omits the category of "political signs" and does not directly refer to political speech at all.

(Def.'s 56.1 ¶¶ 36, 43; Bergstein Aff'n Ex. 9 (noting that the reference to political signs

was "deleted in its entirety"); *see generally* 2014 Law.  Nonetheless, many signs are

exempt from these restrictions, or are subject to less stringent restrictions, including

contractor and construction signs, portable business signs, "for sale" signs, holiday

---

[2] The full text of the 2014 Law is available at http://ecode360.com/28229637.

decorations, road signs advertising agricultural produce, and others. *See* 2014 Law

§ 138-75(A). (*See also* Pl.'s 56.1 ¶¶ 29–33.) Political signs are not similarly exempt.[3]

------

[3] The full list of exempted signs is as follows:

(1) Historical markers, tablets and statues; memorial signs and plaques; names of buildings and dates of erection when cut into any masonry surface or when constructed of wood, bronze, stainless steel or similar material; and emblems installed by governmental agencies, not exceeding 12 square feet.

(2) Flags and insignia of any government, except when displayed in connection with commercial promotion. No more than three flags may be displayed at one time, except on the following federal holidays: Patriots' Day, Fourth of July, Memorial Day, Flag Day, and Veterans' Day.

(3) On-premises directional signs for the convenience of the general public identifying public parking areas, fire zones, entrances and exits and similar signs. Such signs shall not exceed one square foot per face and four feet in sign structure height. Business names, logos, and personal names shall not be allowed, including advertising messages and insignias. The number of such signs shall be limited to those determined by the Planning Board to be necessary for the safe and orderly circulation of traffic and as necessary to indicate specific traffic and/or parking regulations applying to the site.

(4) Nonilluminated warning, private drive, posted or no-trespassing signs, not exceeding two square feet per face.

(5) One on-premises sign, either freestanding or attached, in connection with any residential building in a zoning district for permitted professional offices or home occupations, not exceeding two square feet, six feet in sign structure height, and set back 15 feet from the highway right-of-way. Such sign shall state the name and vocation only. The sign and sign structure shall be made of wood, stone, metal, or any wood-like material. Freestanding signs shall be placed within 10 feet of the driveway or walkway leading from the public road to the residence.

(6) Number and name plates identifying residents, mounted on homes, apartments or mailboxes, not exceeding one square foot in area.

(7) Lawn signs identifying residents, not exceeding one square foot or two square feet if doubled-faced. Such signs are to be nonilluminated except by a light which is an integral part of a lamppost if used as a support, with no advertising message thereon.

(8) Nonilluminated "For Sale," "For Rent" real estate signs and signs of similar nature, concerning the premises upon which the sign is located: in a residential zoning district, one sign not exceeding five square feet per side; and in a business or industrial zoning district, one sign not exceeding 16 square feet set back at least 15 feet from all property lines. All such signs shall be removed within three days after

6

the sale, lease, or rental of the premises.  No more than two temporary nonilluminated real estate "Open House" directional signs not exceeding four square feet in size per sign face and not exceeding 10 square feet overall (including a maximum of two faces and support legs) may be placed at street corners to direct traffic to the house for sale and may not be left overnight.  The structure of all such signs shall be no more than four feet in height.

(9) Roadside stands selling agricultural produce grown on the premises in season are entitled to one sign that does not exceed 10 square feet and is set back at least 15 feet from the public right-of-way.  The structure of such signs shall be no greater than six feet in height.  Signs in place for more than two weeks shall require a seasonal sign permit.

(10) Window signs and posters not exceeding four square feet or 50% of the window area, whichever is less, and subject to the following conditions:

(a) No more than one sign or poster per door or window, including the "Open/Closed" sign.

(b) The area of the sign in a door shall not exceed 25% of the window space of the door.

(c) Signs must be professionally produced by a franchise owner or corporation, professional sign maker, or, at a minimum, be computer generated.  No handmade signs shall be allowed to be posted on any door or window.

(d) Window signs (i.e., open/closed signs) may be illuminated.  Any illumination shall be constant, and shall not be animated, flashing, rotating, fluttering, or moving in any way.

(11) Decals indicating hours of operation and similar information, subject to the following restrictions:

(a) A decal posting the hours of operation shall not exceed one square foot, and may be placed on any window or door of a business.

(b) A total of five small informational decals may be permitted on business doors and windows.  Individual decals shall not exceed 25 square inches.  Decals can include, but shall not be limited to, whether doors open automatically, push, pull, identify services provided within an establishment, types of credit cards accepted, whether surveillance equipment is being used, logos and any other similar information the establishment wishes to post.

(12) Holiday decorations, including lighting displayed in season.

(13) At gasoline stations: integral attached price signs on gasoline pumps.

(14) Public telephone identification signs.

(15) Handicap-accessible parking access signs and pavement markings which meet Department of Transportation standards and dimensional requirements.

B.  Procedural Background

Plaintiff filed her Complaint on March 25, 2014.  (Dkt. No. 1.)  On August 5, 2014, the Court held a pre-motion conference, (*see* Dkt. (minute entry for Aug. 5, 2014)), at which "the Town advised the Court that . . .  it would address the alleged constitutional infirmities of the 2013 [Code] and amend it," (Def.'s 56.1 ¶ 6).  The Court granted the Parties' proposed briefing schedule for motions for summary judgment on September 5, 2014.  (*See* Dkt. No. 15.)  On September 10, 2014, with Defendant's consent, Plaintiff filed her First Amended Complaint. (Dkt. No. 17; *see also* Dkt. No. 16 (Stipulation).)  The Court thereafter approved a revised briefing schedule, (Dkt. No. 20), pursuant to which Plaintiff filed a Motion for Summary Judgment and associated memoranda on November 3, 2014, (Dkt. Nos. 21–25), and Defendant filed a Cross-Motion for Summary Judgment and associated memoranda on January 15, 2015, (Dkt. Nos. 30–34).  Thereafter, with Defendant's consent, Plaintiff filed a Second Amended Complaint on January 29, 2015.  (Second Am. Compl. (Dkt. No. 38); *see also* Dkt. No. 35 (consent to filing of amended complaint and modified briefing schedule).)  The Court thereafter denied the then-pending Motions without prejudice as moot, and adopted the Parties' suggested briefing schedule, (Dkt. No. 36), pursuant to which the Parties refiled their Motions and accompanying memoranda, (Dkt. Nos. 41–50).  Plaintiff filed her Reply, and Counter Statement to Defendant's Rule 56.1 Statement, on May 14, 2015.  (Dkt. Nos. 54–55).  Defendant filed its

--------

(16) Signs customarily incidental to municipal buildings and structures, parks and playgrounds.

2014 Law § 138-75(A).

Reply on May 29, 2015.  (Dkt. No. 56.)  The Court held oral argument on the pending Motions

on June 23, 2015.  (*See* Dkt. (minute entry for June 23, 2015).)

## II.  Discussion

In her Second Amendment Complaint, Plaintiff asserts facial challenges to the 2011,

2013, and 2014 Laws, alleging that they violate the First Amendment, as well as an as-applied

challenge to the 2011 Law, alleging its enforcement against Plaintiff violated the First

Amendment.  (Second Am. Compl. ¶¶ 31–33.)  Plaintiff seeks compensatory damages for the

enforcement of the 2011 Law, nominal damages for the "enactment and enforcement" of the

2011 Law, compensatory and nominal damages for the "enactment" of the 2013 Law, a

declaratory judgment that the 2013 and 2014 Laws were unconstitutional "to the extent that

[they] regulate[d] political campaign signs," a declaratory judgment that "the portions of" the

2011 Law "that were applied against [P]laintiff" were unconstitutional, and attorney's fees and

costs.  (*Id.* ¶ 33.)

Plaintiff, in her Motion, seeks summary judgment "on the constitutionality of

[D]efendant's sign laws from 2011 and 2013 as well as the current ordinance, revised

in . . . 2014," to the extent that they regulate political campaign signs.  (Pl.'s Mem. of Law in

Supp. of Her Mot. for Summ. J. ("Pl.'s Mem.") 1.)  Plaintiff "also seeks to enjoin enforcement of

the 2014 ordinance."  (*Id.*)  Plaintiff accordingly does *not* seek summary judgment on her claims

for damages and declaratory relief based on the alleged unconstitutionality of the 2011 and 2013

Laws.   Defendant, in its Motion, seeks summary judgment on all of Plaintiff's claims on res

judicata, standing, and mootness grounds, and because the 2014 Law is, according to Defendant,

9

constitutional.  Defendant does not contest Plaintiff's claim that the 2011 and 2013 Laws were facially unconstitutional, or that the 2011 Law was unconstitutional as applied.

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River. v. Rockland Cty. Sewer Dist. No. 1*, No. 07-CV-109, 2014 WL 1621292, at *12 (S.D.N.Y. Apr. 22, 2014) (same).  Additionally, "[i]t is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co., v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 1386633, at *2 (S.D.N.Y. Apr. 9, 2014) (same).  "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alterations and internal quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a

non-movant] need[s] to create more than a 'metaphysical' possibility that his [or her] allegations were correct; he [or she] need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie,* 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co.. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot rely on the mere allegations or denials contained in the pleadings," *Walker v. City of New York*, No. 11-CV-2941, 2014 WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted); *see also Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) ("An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."). At summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, MDL No. 1358, No. M21-88, 2014 WL 840955, at *2 (S.D.N.Y. Mar. 3, 2014) (same). To facilitate such action, "[a] [party] opposing a motion for summary judgment must lay bare his [or her] proof in evidentiary form and raise an issue of fact sufficient to send to the jury." *Weiss v. La Suisse, Société D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003) (internal quotation marks omitted). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of the evidence are matters for the jury, not for the court on a motion for summary judgment."

11

*McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (alteration and internal quotation marks

omitted).  A court's goal should, accordingly, be "'to isolate and dispose of factually

unsupported claims.'"  *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d

Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

    B.  Analysis

        1.  Standing

      Defendant contests Plaintiff's standing to challenge the Code.  Article III of the United

States Constitution limits federal judicial authority to "cases" and "controversies."  U.S. Const.

art. III, § 2.  *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 559 (1992).  Generally, under Article

III, to obtain retrospective relief, i.e., damages, a plaintiff must show (1) that she suffered an

injury in fact which is concrete and particularized and actual or imminent, (2) that the injury is

fairly traceable to the alleged unlawful conduct of the defendant, and (3) that it is likely that the

injury will be redressed by a favorable federal court decision.  *See Marcavage v. City of New

York*, 689 F.3d 98, 103 (2d Cir. 2012) (citing *Lujan,* 504 U.S. at 560–61); *see also Pac. Capital

Bank, N.A. v. Connecticut,* 542 F.3d 341, 350 (2d Cir. 2008) ("[T]o satisfy Article III's standing

requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." (alteration in original)

(some internal quotation marks omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl.

Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000)).  By contrast, "[t]o establish standing to obtain

prospective relief," in this case, declaratory relief, "a plaintiff must show a likelihood that he [or

12

she] will be injured in the future," *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010)

(internal quotation marks omitted); *see also Abidor v. Napolitano*, 990 F. Supp. 2d 260, 272

(E.D.N.Y. 2013) ("An action for declaratory judgment does not provide an occasion for

addressing a claim of alleged injury based on speculation as to conduct which may or may not

occur at some unspecified future date."), "[t]hat is, a plaintiff must demonstrate a 'certainly

impending' future injury," *Marcavage*, 689 F.3d at 103 (quoting *Whitmore v. Arkansas*, 495 U.S.

149, 158 (1990)).  To do so, "a plaintiff cannot rely solely on past injuries; rather, the plaintiff

must establish how he or she will be injured prospectively and that injury would be prevented by

the equitable relief sought." *Id*.  Each of these factors "must be supported in the same way as

any other matter on which . . . [P]laintiff bears the burden of proof." *Lujan*, 504 U.S. at 561; *see*

*also Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 915 F. Supp. 2d 574,

589 (S.D.N.Y. 2013) ("It is the burden of the party invoking federal jurisdiction to establish

standing.").

     In addition to the requirements of Article III, there are also prudential limits on standing.

*See Lerman v. Bd. of Elections*, 232 F.3d 135, 143 (2d Cir. 2000) ("The question of standing

encompasses both constitutional and prudential considerations.").  Generally, a plaintiff may not

"rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S.

490, 499 (1975).  Such considerations are permissive in the First Amendment context, however,

where "litigants . . . are permitted to challenge a statute not because their own rights of free

expression are violated, but because of a judicial prediction or assumption that the statute's very

existence may cause others not before the court to refrain from constitutionally protected speech

or expression." *Va. v. Am. Booksellers Ass'n., Inc.*, 484 U.S. 383, 392–93 (1988) (alteration

omitted).  More specifically, while "[t]he issue of whether a facial challenge may be entertained

is one such prudential consideration . . . ," *Lerman*, 232 F.3d at 143, when levying an

overbreadth First Amendment challenge, a plaintiff "need only demonstrate a substantial risk

that application of the provision will lead to the suppression of speech," *id.* at 144 (internal

quotation marks omitted); *see also Dickerson v. Napolitano*, 604 F.3d 732, 742 (2d Cir. 2010)

("[T]he plaintiff is allowed to challenge a law that may be legitimately applied to his or her own

expressive conduct if the law has the potential to infringe unconstitutionally on the expressive

conduct of others."); *Savago v. Village of New Paltz*, 214 F. Supp. 2d 252, 254 (N.D.N.Y. 2002)

("Exceptions . . . in the First Amendment context allow a plaintiff to challenge a law on its face

on the grounds that it is content-based. . . [and] that it might chill the First Amendment rights not

only of the plaintiff, but of others not before the court." (citation omitted)).  In this context, "[t]o

defend against summary judgment for lack of standing, a plaintiff must set forth by affidavit or

other evidence specific facts supporting standing . . . ."  *Natural Res. Def. Council, Inc. v. U.S.

Food & Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013) (internal quotation marks omitted).

    In its Motion, Defendant argues that Plaintiff (a) fails to demonstrate actual injury arising

from the enforcement of the 2011 Law, because there is insufficient evidence of reputational

damages and nominal damages are insufficient to confer standing, and (b) fails to otherwise

demonstrate standing with respect to the 2013 and 2014 Laws because there is insufficient

evidence that Plaintiff refrained from posting campaign signs for fear that she would prosecuted

again, or that the Plaintiff plans to place such signs in the future.  (*See* Mem. of Law in Supp. of

Def.'s Cross-Mot. and in Opp'n to Pl.'s Mot. ("Def.'s Mem.") 19–21 (Dkt. No. 48).)  Plaintiff,

by contrast, claims she has standing (a) with respect to the facial constitutionality of the 2011,

2013, and 2014 Laws because Plaintiff did not post additional campaign signs—yet wishes to do so in the future—because of concern about being prosecuted again, (b) with respect to the enforcement of the 2011 Law (the as-applied challenge) because "it was embarrassing to defend herself in lower court," and (c) because claims for nominal damages, by virtue of proving the unconstitutionality of the laws at issue, are sufficient to confer standing.  (*See* Pl.'s Mem. 3–4, 15; Pl.'s Mem. of Law in Further Supp. of Her Mot. for Summ. J. ("Pl.'s Reply") 8 (Dkt. No. 54).)

At oral argument, counsel for Defendant admitted that, discovery notwithstanding, Plaintiff had standing to pursue (a) her facial challenge against the 2014 Law, (b) her facial challenge against the 2013 Law, insofar as Plaintiff seeks damages and not prospective relief, and (c) her facial and as-applied challenges against the 2011 Law, insofar as Plaintiff seeks damages and not prospective relief.  Even if Defendant had not conceded standing, however, the Court finds that there is sufficient evidence to establish standing for each of these claims.

With regard to standing for Plaintiff's facial challenge to the 2014 Law, Plaintiff need not have actually violated the 2014 Law to have standing to challenge its facial validity.  *See Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 374 (2d Cir. 2004) ("[The plaintiff] need not have first sought and been denied any permit prior to filing a facial challenge." (emphasis omitted)); *MacDonald v. Safir*, 206 F.3d 183, 189 (2d Cir. 2000) ("[T]here is no need for a party actually to apply or to request a permit in order to bring a facial challenge to an ordinance (or parts of it) . . . .").  Instead, Plaintiff may establish standing by showing a risk of forced self-censorship, *see Sugarman v. Village of Chester*, 192 F. Supp. 2d 282, 289 (S.D.N.Y. 2002) ("[T]he self-censorship injury [the] plaintiff alleges informs our

15

conclusion that [the] plaintiff has demonstrated 'a substantial risk that application of the provision will lead to the suppression of speech' of others not before this [c]ourt with respect to political speech." (quoting *Lerman*, 232 F.3d at 144)), which is "is precisely the type of harm . . . that has led courts to relax traditional standing requirements," *id; see also Am. Booksellers Assoc.*, 484 U.S. at 393 (finding standing even though the newly-enacted law had not been enforced because "the alleged danger of [the] statute [was], in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution"). Here, Plaintiff undeniably maintains that she has not posted campaign signs for fear of violating the prior version of the law, and that because she "remain[s] active in local politics" and "wish[es] to post campaign signs . . . , including multiple signs at once to show support for different candidates," she seeks to enjoin enforcement of the 2014 Law. (Pl.'s Aff. ¶ 11). Indeed, given Plaintiff's limited financial means, campaign signs are one of the few vehicles for political speech available to Plaintiff. (*See id.* ¶ 2). *See also City of Ladue v. Gilleo*, 512 U.S. 43, 57 (1994) ("Residential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute. Even for the affluent, the added costs in money or time of taking out a newspaper advertisement, handing out leaflets on the street, or standing in front of one's house with a handheld sign may make the difference between participating and not participating in some public debate." (citations omitted)).

Additionally, unlike the "mere profession of an intent, some day," to engage in the activity at issue, which the Supreme Court has found insufficient absent a "description of concrete plans, or indeed even any specification of *when* the some day will be," *Lujan*, 504 U.S.

16

at 564 & n.2 (internal quotation marks omitted) (emphasis in original), elections occur with regularity, and Plaintiff's desire to post campaign signs during the election season is supported by specific facts, namely that Plaintiff has posted political signs on her property in the past (as evidenced by pictures attached to Plaintiff's Affidavit), (*see* Pl.'s Aff. ¶ 2 & Ex. 1), that Plaintiff has received past requests from campaigns for Plaintiff to post signs on her property, (*see id.* ¶ 9), and that Plaintiff was prosecuted in 2011 for posting a political sign, (*see* Pls.' 56.1 ¶¶ 12, 14–15). *See Long Island Soundkeeper Fund, Inc. v. N.Y. Athletic Club of City of New York*, No. 94-CV-436, 1996 WL 131863, at *6 (S.D.N.Y. Mar. 22, 1996) (finding standing based on affidavits identifying members of the plaintiff group that "regularly use[d] . . . [and] intend[ed] to continue to use" the recreational area at issue); *cf. Act Now to Stop War & End Racism Coal. v. District of Columbia*, 589 F.3d 433, 435 (D.C. Cir. 2009) ("[S]tanding to challenge laws burdening expressive rights requires only a credible statement by the plaintiff of intent to commit violative acts and a conventional background expectation that the government will enforce the law."); *Hispanic Leadership Fund, Inc. v. Walsh*, No. 12-CV-1337, 2013 WL 5423855, at *8 (N.D.N.Y. Sept. 26, 2013) (adopting, inter alia, the Tenth Circuit's "test for determining standing in suits based on a chilling effect of speech," which provides that plaintiffs need only show "'(1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced.'" (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006)).  Accordingly, Plaintiff's experience suggests, at the very least, that there is a "substantial risk" that the 2014 Law "will lead to the

suppression of speech," such that she has standing to challenge the law. *Lerman*, 232 F.3d at

143; *see also Natural Res. Def. Council*, 710 F.3d at 79 (noting that an affidavit is sufficient to

defend against summary judgment for lack of standing).

With regard to standing for Plaintiff's facial challenge to the 2013 Law, Plaintiff avers

that she did not post signs in the "high-profile race" for sheriff in 2013, despite being asked to do

so, "for fear of violating the Code and enduring further frustrations and difficulties associated

with responding to the charges and defending [herself]." (Pl.'s Aff. ¶ 9.)  Plaintiff also contends

that, despite a desire to do so, she "did not post any signs" during the 2014 campaign for

governor for similar reasons. (*Id.* ¶ 10.)  As above, these averments establish that there was a

substantial risk that the 2013 Law led to the suppression of political speech—particularly

Plaintiff's political speech—establishing standing.

With regard to standing for Plaintiff's facial and as applied challenges to the 2011 Law,

Plaintiff avers that because she practices in "local courts throughout Putnam County, it was

humiliating to have to publicly defend [herself] in Town Court." (*Id.* ¶ 6.)  Plaintiff contends

that, despite the Town's offer of an ACD, she nonetheless pursued the case because she "did not

want any convictions or findings of administrative liability," "did not want to jeopardize [her]

reputation by having to appear in court on further code violations," and "feared that any charges

might make it difficult . . . to obtain a real estate license." (*Id.*)  Plaintiff also avers that she "did

not post signs on [her] property after [Defendant] charged [her] in September 2011 because [she]

did not want to endure any additional prosecutions under the sign ordinance." (*Id.*)  Plaintiff also

states that she did not subsequently post signs for the 2011 campaign "[o]ut of fear of violating

the Code." (*Id.* ¶ 8.)  Plaintiff accordingly has standing for her as-applied challenge. *See*

18

*Allstate Ins. Co. v. Serio*, No. 97-CV-670, 2000 WL 554221, at *13 (S.D.N.Y. May 5, 2000) (finding standing for an as-applied challenge based on the plaintiff's fear that the challenged statute would be enforced against it); *cf. United States v. Montalvo*, No. 08-CV-4, 2009 WL 667229, at *2 (W.D.N.Y. Mar. 12, 2009) ("Because defendant is being prosecuted under [the challenged statute], he has standing to bring an 'as applied' challenged to the statute.").

Additionally, with respect to the 2011 and 2013 Laws, even if Plaintiff has failed to offer sufficient evidence to substantiate actual damages, the fact of the suppression of protected speech alone confers standing. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 651 (2d Cir. 1998) ("Nominal damages are available in actions alleging a violation of constitutionally protected rights, even without proof of any actual injury."); *Husain v. Springer*, 691 F. Supp. 2d 339, 342 (E.D.N.Y. 2009) (noting that "a claim for nominal damages . . . is ordinarily sufficient to support standing in federal court"); *Kempner v. Town of Greenwich*, 562 F. Supp. 2d 242, 248–49 (D. Conn. 2008) (finding standing to assert a claim for nominal damages on the basis that the plaintiff "engaged in speech that is protected by the First Amendment in the past" related to challenged policy); *cf. Sugarman*, 192 F. Supp. 2d at 290 (holding that the "[p]laintiff has asserted a proper claim for nominal damages under § 1983 for the alleged constitutional violation" and that "[i]t therefore follows that [the] plaintiff has a legally cognizable interest in the outcome of the dispute"). Accordingly, Plaintiff has standing to pursue her claims, and Defendant's Motion for Summary Judgment is denied as to standing.

### 2.  Mootness

Defendant argues that Plaintiff's 2011 and 2013 Law claims are moot because those versions of the Code were superseded by the 2014 Law, (Def.'s Mem. 22–23), such that the

Court no longer has jurisdiction over the case, *Dean v. Blumenthal*, 577 F.3d 60, 64 (2d Cir. 2009) ("We lack jurisdiction if we conclude that a case is moot.").  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969).  The burden on Defendant "to demonstrate mootness is a heavy one." *Sugarman*, 192 F. Supp. 2d at 290 (internal quotation marks omitted).  However, "[t]he voluntary cessation of allegedly illegal conduct usually will render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Lamar*, 356 F.3d at 375 (internal quotation marks omitted).

While the "voluntary repeal of a constitutionally repugnant law does not necessarily moot challenges to it, because without a judicial determination of constitutionality the particular governing body remains free to reinstitute the law at a later date," *id.* at 376 (internal quotation marks omitted), the Second Circuit has noted a "hesitan[cy] to hold that a significant amendment or repeal of a challenged provision that obviates the plaintiff's claims does not moot a litigation, absent evidence that the defendant intends to reinstate the challenged statute after the litigation is dismissed, or that the municipality itself does not believe that the amendment renders the case moot," finding the plaintiff's claims in that case moot because there were no such indications, *id.* at 377; *see also Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451–52 (2d Cir. 2002) (affirming the district court's finding that amendments to a sign ordinance mooted the plaintiff's claim for injunctive relief because "there [was] no reason to think that, having completely revised its regulations through proper procedures, the [defendant] [t]own [had] any

intention of returning to the prior regulatory regime"). *But see, e.g., Nat'l Advert. Co. v. Town of Babylon*, 900 F.2d 551, 554 n.2 (2d Cir. 1990) ("As the Supreme Court has observed, a voluntary repeal of a constitutionally repugnant law does not necessarily moot challenges to it, because without a judicial determination of constitutionality the particular governing body remains free to reinstitute the law at a later date." (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288–89 & n.10 (1982)).  Here, while Plaintiff has levied a separate challenge to the constitutionality of the 2014 Law, there is no evidence in the record of any risk that the Town would revert from the 2014 Law back to a prior version, such that the mere ability of the Town to repeal the 2014 Law avoids the mootness issue.  *See Lamar*, 356 F.3d at 377 (finding claims moot because there was "nothing on this record that would lead [the court] to believe that [the defendant] intend[ed] to return to the questionable state of affairs that existed before [the plaintiff] filed suit").  *But see Sugarman*, 192 F. Supp. 2d at 291 ("Because it is not clear that the offending statute will not resurface in the future, we decline to moot [the] plaintiff's claim on this basis.").

However, as Plaintiff notes, (Pl.'s Reply 4), in general "so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608–09 (2001); *see also Van Wie v. Pataki*, 267 F.3d 109, 115 n.4 (2d Cir. 2001) (noting that a claim for damages, even nominal in nature, prevents mootness); *Stokes v. Village of Wurtsboro*, 818 F.2d 4, 6 (2d Cir. 1987) ("Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable." (internal quotation marks omitted)); *Keepers, Inc. v. City of Milford*, 944 F. Supp. 2d 129, 141 (D. Conn. 2013) (finding that the plaintiff's

21

facial and as-applied challenges were not moot where the plaintiff made a claim for nominal

damages because "[c]laims for damages or other monetary relief automatically avoid mootness,

so long as the claim remains viable" (internal quotation marks omitted)).[4]  Accordingly,

Plaintiff's claims for nominal and compensatory damages based on facial challenges to the 2011

and 2013 Laws, and an as-applied challenge to the 2011 Law, are not moot, as Defendant

suggests, in part, in its Reply, and so Defendant's Motion is denied as to those claims.  (See

Def.'s Reply Mem. of Law in Further Supp. of Def.'s Cross-Mot. ("Def.'s Reply") 3–4 (Dkt. No.

56) ("While it is true that claims for compensatory damages arising from enforcement of a

repealed law may survive a mootness challenge, such claims do not revive moot claims for

declaratory or injunctive relief.").)

        Seeking damages, however, does not rescue Plaintiff's claims for declaratory relief.  See

Sidepockets, Inc. v. City of Milford, 528 F. Supp. 2d 34, 36–37 (D. Conn. 2007) (stating that

"[t]he repeal of an ordinance generally moots a challenge to the constitutionality of that

ordinance," but that "when a plaintiff requests damages, as opposed to only declaratory or

injunctive relief, changes to or repeal of the challenged ordinance may not necessary moot the

plaintiff's constitutional challenge to that ordinance" (internal quotation marks omitted)); see

also Dean, 577 F.3d at 66 (holding that, although the plaintiff's requested declaratory and

injunctive relief was mooted by a change in policy, her "claims [w]ere not moot insofar as she

[sought] damages"); Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253,

---

        [4] One case that Defendant cites, Craft v. Village of Lake George, 39 F. Supp. 3d 229
(N.D.N.Y. 2014), does conclude that a claim for damages cannot save the mootness of a facial
challenge on the putative basis that damages are not available for such challenge, id. at 240, but
that case, as suggested by the case law above, is an outlier.

260–61 (3d Cir. 2007) (finding that while the plaintiff's claims for injunctive relief were mooted by the amendment of the ordinance at issue, the plaintiff's claims for compensatory damages and attorney's fees based on a facial challenge to the ordinance were not moot); *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1257–58 (10th Cir. 2004) (finding that while the plaintiff's claims for declaratory and injunctive relief based on facial and as-applied challenges to the prior version of an amended ordinance were moot, the plaintiff's claim for nominal damages was not moot); *Alive v. Hauppauge Sch. Dist.*, No. 08-CV-1068, 2009 WL 959658, at *5 (E.D.N.Y. Apr. 6, 2009) ("While the court has determined that any claims for injunctive and declaratory relief . . . are moot, the court finds itself compelled to allow these claims to survive insofar as they seek nominal damages for the violation of substantive constitutional rights."). Accordingly, Plaintiff's claims for declaratory relief based on facial challenges to the constitutionality of the 2011 or 2013 Laws are moot because the 2011 and 2013 Laws were superseded by the 2014 Law, and Defendant's Motion for Summary Judgment is granted as to those claims.[5]

### 3.  Res Judicata

The doctrine of res judicata, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 169 (2d Cir. 2012) (internal quotation marks omitted).  "In other words, 'if claims arise out of the same factual grouping, they are deemed to be part of the same cause of action and the later

---

[5] At oral argument, Counsel for Plaintiff admitted that Plaintiff cannot seek prospective relief from the 2011 and 2013 Laws.

claims will be barred without regard to whether [they are] based upon different legal theories or seek[] different or additional relief.'"   *Modular Devices, Inc. v. Alcatel Alenia Space Espana*, No. 08-CV-1441, 2009 WL 749907, at *2 (E.D.N.Y. Mar. 16, 2009) (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986) (some internal quotation marks omitted)).   Invoking res judicata requires a showing "that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."   *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (internal quotation marks omitted).   A state court judgment must be given "the same preclusive effect" in federal court "that it would have in a state court."   *Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan*, 263 F.3d 196, 200 (2d Cir. 2001) (citing 28 U.S.C. § 1738).

Defendant argues that Justice Folchetti's dismissal of the charges against Plaintiff in Southeast Town Court constitutes an "adjudication on the merits regarding the enforcement of the 2011 Sign Ordinance."   (Def.'s Mem. 15.)   Defendant maintains that, in that case, Plaintiff argued for dismissal "on several grounds, including constitutional arguments premised upon the Fifth and Fourteenth Amendments," and that Plaintiff could have raised the instant claims about the 2011 Law at that time, (*id.* at 15), such that her facial and as-applied challenges to the 2011 Law are barred by operation of res judicata.[6]

---

[6] At times, Defendant confuses res judicata and collateral estoppel.   For purposes of Defendant's Motion, the Court proceeds based on the clear statement of the claim in Defendant's Motion, namely that it is based on "res judicata, or claim preclusion."   (Def.'s Mem. 13 (italics omitted).)

24

Plaintiff originally brought her motion to dismiss in Town Court on a number of grounds, including violation of the Fifth and Fourteenth Amendments and, separately, New York Criminal Procedural Law § 170.40.  (*See* Def.'s Decl. Ex. D-1 (Pl.'s Mot.).)  Justice Folchetti, in his decision, explicitly noted that he was "dismissing [the] proceeding pursuant to CPL § 170.40(1)," and, accordingly, he did "not reach any determination upon any of the remaining branches of relief sought in [Plaintiff's] motion."  (*Id.* Ex. F, at unnumbered 5.)

The Court need not determine whether Judge Folchetti's decision triggers res judicata, because when "a plaintiff [is] precluded from recovering damages in the initial action by formal jurisdictional or statutory barriers, not by [the] plaintiff's choice, a subsequent action for damages will not normally be barred by res judicata even where it arises from the same factual circumstances as the initial action."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Because "the nature of the prior court proceeding was such that [Plaintiff] could not have sought damages for [her] alleged constitutional injuries (while defending [herself] on the charge . . . ), res judicata does not bar [her] § 1983 suit for damages."  *Leather v. Eyck*, 180 F.3d 420, 425 (2d Cir. 1999); *see also Barrington v. New York*, 806 F. Supp. 2d 730, 741 (S.D.N.Y. 2011) ("[T]he Second Circuit has repeatedly held that res judicata does not bar a plaintiff who has secured relief in a limited state proceeding from later seeking damages that were unavailable in the prior proceeding . . . .  And the New York Court of Appeals has endorsed that application of New York res judicata law." (italics and citations omitted)); *Greene v. Sweeney*, No. 83-CV-2264, 1985 WL 547, at *2 (S.D.N.Y. Apr. 25, 1985) ("It is totally inaccurate to say that [the] plaintiff . . . freely sought redress in state court.  On the contrary, [the] plaintiff's participation in the previous action was for the purpose of defending himself against criminal charges. . . . [H]e

obviously did not have the opportunity to litigate his claim for damages as part of his criminal

defense.  Therefore, res judicata does not preclude plaintiff['s] [claim]." (emphasis omitted)); *cf.*

*Fallica v. Town of Smithtown*, No. 08-CV-1564, 2008 WL 4376861, at *1 (E.D.N.Y. Sept. 25,

2008) ("Both the New York Court of Appeals and the Second Circuit Court of Appeals have held

that a judgment in a prior Article 78 proceeding does not have claim preclusive effect on a

subsequent civil rights claim for monetary damages.").  Therefore, Plaintiff's claims for nominal

and compensatory damages stemming from her facial and as-applied challenges to the 2011 Law

are not barred by res judicata, and Defendant's Motion for Summary Judgment, insofar as it is

based on the application of res judicata, is denied as to Plaintiff's facial and as-applied

challenges to the 2011 Law.[7]

### 4.  Constitutionality of the 2011, 2013, and 2014 Laws

Having dismissed Plaintiff's claims for declaratory relief based on the 2011 and 2013

Laws on mootness grounds, Plaintiff's remaining claims are for damages based on facial

challenges to the 2011 and 2013 Laws, damages based on an as-applied challenge to the 2011

Law, and declaratory relief based on a facial challenge to the 2014 Law.  Because Defendant

does not defend the constitutionality of the 2011 and 2013 Laws, either facially or as-applied, the

Court focuses its analysis on what Defendant maintains is the least restrictive version of the

Code: the 2014 Law.

---

[7] The Court need not reach the question of whether Plaintiff's claim for declaratory relief
based on the 2011 Law is barred by res judicata, because, as discussed above, that claim is moot.

a.  Facial Challenge to the 2014 Law

In general, "[f]acial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort," wherein a plaintiff has a "heavy burden in advancing [her] claim."  *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (internal quotation marks omitted).  "To prevail [on a First Amendment challenge], [the plaintiff] must demonstrate a substantial risk that application of [the law in question] will lead to the suppression of speech."  *Id.*

 "When conducting First Amendment analysis, courts examine challenged governmental regulations to discern whether they are content based or content neutral since 'the scope of protection for speech generally depends on whether the restriction is imposed because of the content of the speech.'"  *Bd. of Managers of Soho Int'l Arts Condo. v. City of New York*, No. 01-CV-1226, 2004 WL 1982520, at *10 (S.D.N.Y. Sept. 8, 2004) (quoting *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 450 (2d Cir. 2001)).  "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or message expressed."  *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2227 (2015).  If a law is content-based, "strict scrutiny applies and the municipality must show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end."  *Sugarman*, 192 F. Supp. 2d at 292–93 (internal quotation marks omitted); *see also Reed*, 135 S.Ct. at 2226 ("Content-based laws . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."). Moreover, "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion on an entire

27

topic." *Consol. Edison Co. of N.Y., Inc. v. Public Serv. Comm'n*, 447 U.S. 530, 537 (1980); *see also Hobbs v. County of Westchester*, 397 F.3d 133, 148 (2d Cir. 2005) (same).  By contrast, "the government may impose reasonable time, place[,] and manner restrictions on speech as long as they are content neutral, narrowly tailored to serve a significant government interest[,] and leave open 'ample channels for communication.'"  *Sugarman*, 192 F. Supp. 2d at 292 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *see also Lusk v. Village of Cold Spring*, 475 F.3d 480, 495 n.16 ("[C]ontent-neutral criteria for political and other signage that are sufficiently objective and precise, and that permit residents to engage in some form of spontaneous speech, have been held to be constitutionally permissible."), *rev'd on other grounds*, 475 F.3d 480 (2d Cir. 2007).

"While signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers.  Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.  It is common ground that governments may regulate the physical characteristics of signs . . . ."  *City of Ladue*, 512 U.S. at 48. Nonetheless, "[a] statute regulating speech 'of private citizens on private property . . . is presumptively impermissible, and this presumption is a very strong one.'"  *Sugarman*, 192 F. Supp. 2d at 291 (quoting *City of Ladue*, 512 U.S. at 59 (O'Connor, J., concurring)).  And, more specifically, "[t]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office."  *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989) (internal quotation marks omitted); *see also Sugarman*, 192 F. Supp. 2d at 291 ("The Supreme Court has held that political speech is entitled to the highest form of

28

protection by the Free Speech Clause of the First Amendment.").  "When a law burdens core political speech," including the political expression at issue in this case, courts "apply 'exacting scrutiny' . . . ."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995); *see also Field Day, LLC v. County of Suffolk*, No. 04-CV-2202, 2005 WL 2445794, at *15 (E.D.N.Y. Sept. 30, 2005) (same), *aff'd*, 463 F.3d 167 (2d Cir. 2006); *cf. Knoeffler v. Town of Mamakating*, 87 F. Supp. 2d 322, 331 (S.D.N.Y. 2000) ("[T]he Second Circuit . . . [requires] strict content neutrality for all regulation of noncommercial speech.").  Exacting scrutiny is somewhat less demanding than strict scrutiny, in that it only requires a "substantial relation" between the restriction and a "sufficiently important government interest."  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366–67 (2010) (internal quotation marks omitted).

Because the 2014 Law restricts political speech, even if it were content-neutral, exacting scrutiny would apply.  Here, however, strict scrutiny applies because the 2014 Law is content-based.

The "principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys . . . .  A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."  *Ward*, 491 U.S. at 791 (citation omitted).  "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based."  *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643 (1994).  In other words, "[a]n ordinance is content-based when the content of the speech determines whether the ordinance applies."  *Sugarman*, 192 F. Supp. 2d at 292.  By contrast, "government regulation of expressive activity is content

neutral so long as it is justified without reference to the content of the regulated speech." *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 155 (internal quotation marks omitted).

Defendant maintains that the 2014 Law is entirely content-neutral because it "does not contain any reference to political speech at all," but rather applies to all temporary signage for a single activity or event. (Def.'s Mem. 24.) Defendants are correct that, in isolation, the section of the 2014 Law that explicitly governs temporary signage, § 138-75(C), is content-neutral. However, § 138-75(A) exempts certain signs from these restrictions, and political signs are not among those exempted. Defendant attempts to justify these exceptions by arguing that the exempted signs do not correspond to a "scheduled activity or event." (*Id*. at 25 (internal quotation marks omitted).) This explanation does not square with the 2014 Law, as some signs that clearly refer to a temporary scheduled activity, e.g., "for sale" signs, are subject to less stringent requirements than political signs, *see* 2014 Law § 138-75(A)(8), and others, like holidays decorations, are completely exempt, *see* 2014 Law § 138-75(A)(12). Moreover, such distinctions are clearly based on the content of the speech at issue. *Cf. Reed*, 135 S.Ct. at 2231 (noting that "simply because an event (i.e., an election) is involved" does not allow restrictions that force a "content-based inquiry" to "evade strict scrutiny review" (italics omitted)).[8]

In *Sugarman*, the court considered a number of restrictions similar to those imposed by the 2014 Law, and found that a set of restrictions placing "durational, numerical[,] and size

---

[8] Defendant's interpretation of the 2014 Law would also render the definition of "temporary sign" superfluous, as the restrictions already only apply to those signs that refer to a "single activity or event." 2014 Law § 138–73. *See Marx v. Gen. Revenue Corp.*, 133 S.Ct. 1166, 1178 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

limitations" on "all temporary signs," including political signs, for the purpose of maintaining "aesthetics, property values[,] and . . .  safety," was "content-neutral" and did "not unduly restrict political speech."  192 F. Supp. 2d at 294–95.  However, the *Sugarman* court distinguished this set of restrictions, which, again, applied to all temporary signs without exception, from two other sets of restrictions by which certain temporary signs were exempted from the application of the restrictions, as is the case with the 2014 Law here.  With regard to one of these sets of restrictions, the *Sugarman* court found that "while a [durational] posting limit on all temporary signs would pass constitutional scrutiny," they were content-based, and unconstitutional, because they "permit[ted] the posting of some temporary signs beyond [that limit]."  *Id.* at 298.  With regard to the other set of restrictions, the *Sugarman* court came to the same conclusion about content and location restrictions that, like the 2014 Law, only explicitly referenced temporary signs, finding that exemptions to the restrictions rendered them content-based, and unconstitutional, because they "impermissibly favored certain types of temporary commercial signs over noncommercial political signs."  *Id.* at 301.

Courts in other circuits have come to the same conclusion about similar statutes.  For example, in *McFadden v. City of Bridgeport*, 422 F. Supp. 2d 659 (N.D. W. Va. 2006), the court found that certain restrictions on temporary signs were "content-based," even though, by the text of those restrictions, they applied to all "temporary" and "political signs," because exemptions to the restrictions made it such that "[t]he only way to determine which signs [were] subject to those restrictions [was] to read the messages printed on them."  *Id.* at 673; *see also Bee's Auto, Inc. v. City of Clermont*, 8 F. Supp. 3d 1369, 1381 (M.D. Fla. 2014) ("[B]ecause some types of signs are subject to permitting, temporal, setback, and numerical limitations, while others are

exempt from such regulations based on the nature of the messages they seek to convey, the [c]ourt concludes that that the [c]ity's sign [c]ode is undeniably a content-based restriction on speech."); *Outdoor Sys., Inc. v. City of Lenexa*, 67 F. Supp. 2d 1231, 1240 (D. Kan. 1999) (finding that because only certain signs were subject to the restrictions at issue, they were content-based).   Accordingly, while it deletes any explicit reference to political signs, the 2014 Law is a content-based restriction on speech precisely by that omission as it relates to exemptions under the law, and therefore strict scrutiny applies.   *See Clear Channel Outdoor, Inc. v. Town Bd.*, 352 F. Supp. 2d 297, 309 (N.D.N.Y. 2005) (finding a statute that "restrict[ed] the posting period of signs relating to certain events" was "content-based differential treatment" that "render[ed] [the] provision unconstitutional"); *cf. Reed*, 135 S.Ct. at 2227 (finding a law that bans signs, yet exempts ideological signs, political signs, and temporary directional signs, and subjects each of those categories to different restrictions, was content-based because the restrictions on the signs "depend[ed] entirely on the communicative content of [those] sign[s]").

The question, then, is whether the 2014 Law survives strict scrutiny.   As noted above, Defendant faces a high burden in justifying a content-based restriction, particularly given the presumption of impermissibility.   *See Sugarman*, 192 F. Supp. 2d at 291.   While aesthetics, public health, safety, and welfare, and property values, the interests the 2014 Law explicitly exists to address, (*see* Defs.' Mem. 27 (citing 2014 Law § 138–72)), qualify as "substantial interests," (*id.* at 300), Defendant cites no case law—nor is this court aware of any—finding that such interests are *compelling* such that the 2014 Law can survive strict scrutiny.   Rather, the cases dictate that such interests are not compelling.   *See Clear Channel*, 352 F. Supp. 2d at 304 ("[W]hile aesthetics and traffic safety are regularly found to be substantial enough government

32

interests to support a content-neutral regulation, those interests are rarely compelling enough to support a content-based regulation."); *Knoeffler*, 87 F. Supp. 2d at 330 ("Even where the government has declared a policy of promoting aesthetics and traffic safety, . . . restrictions intended to accomplish those interests have failed to pass strict scrutiny and have been struck down."); *cf. Orazio v. Town of Hempstead*, 426 F. Supp. 1144, 1149 (E.D.N.Y. 1977) (holding that "no time limit on the display of pre-election political signs is constitutionally permissible under the First Amendment," and noting that "[w]hether temporary or not, politics is important business, and it is difficult to perceive what government interest is served by placing time limits on the public's opportunity to be informed about candidates who are seeking public office or organizations which support them").

Even if the interests behind the 2014 Law were compelling, they bear an insufficient relationship to the text of the 2014 Law.  The "mere assertion of a content-neutral purpose [will not] be enough to save a law which, on its face, discriminates based on content," *Turner Broad. Sys.* 512 U.S. at 642–43, because some regulations do not "accomplish[] the stated purpose in a content-neutral manner," *Whitton v. City of Gladstone*, 54 F.3d 1400, 1406 (8th Cir. 1995).  For this reason, "[e]xemptions from an otherwise legitimate regulation of a medium of speech may be noteworthy for a reason quite apart from the risks of viewpoint and content discrimination: They may diminish the credibility of the government's rationale for restricting speech in the first place."  *City of Ladue*, 512 U.S. at 52; *see also Reed*, 135 S.Ct. at 2231 (rejecting aesthetics and traffic safety as justifications for content-based restrictions because the distinctions "fail as hopelessly underinclusive," because the town at issue "allow[ed] unlimited numbers of other types of signs" without restriction "that create the same problem").

33

Such is the case with the 2014 Law.  There is no reason to believe that temporary signs that reference a particular activity or event have a greater effect on aesthetics or traffic safety than construction, for sale, or holiday signs, or other signs that are exempted in the 2014 Law, some of which are just as temporary as political signs.  *See Lusk*, 418 F. Supp. 2d at 324 (noting, in finding restrictions purportedly justified by aesthetic and traffic safety concerns unconstitutional, that "[a]esthetics can be just as compromised, and motorists can be just as distracted, by displays of governmental, religious[,] or charitable flags, badges[,] and insignia as by displays of other types of flags, badges[,] or insignia").  In fact, as noted above, Defendant does not point to any meaningful difference between many of the exempt signs—e.g., "for sale" signs—and those that are not exempted.

Accordingly, the Court finds that the 2014 Law, insofar as it regulates political signs, is facially unconstitutional, Plaintiff's Motion for Summary Judgment is granted as to the constitutionality of the 2014 Law, and enforcement of the 2014 Law to restrict the posting of political signs is enjoined.[9]

### b.  2011 and 2013 Laws

As indicated above, Defendant does not defend the constitutionality of the 2011 and 2013 Laws, either facially or as applied.  While those Codes are for the most part identical to the 2014 Law, they *are* content-based restrictions on political speech because they apply particular

---

[9] Even if some portions of the 2014 Law could be severed, neither Party seeks such a remedy, and the Second Circuit has noted that it is "particularly hesitant to undertake revisions of [such an] ordinance in light of the fact that [it is] a federal court interpreting a local ordinance. The interests of federalism and comity dictate conservatism in imposing [its] interpretive views on state statutes."  *Nat. Advert. Co. v. Town of Niagra*, 942 F.2d 145, 150 (2d Cir. 1991).

restrictions to only political signs and exempt several categories of signs from restrictions.  *See* 2011 Law § 138-75(A)(16)); 2013 Law § 138-75(A)(16).  (*See also* Pl.'s Reply 15 (discussing the "primary difference" between the 2013 and 2014 Laws).)  For this reason, the 2011 and 2013 Laws were with respect to political signs, also facially unconstitutional, and the 2011 Law was unconstitutional as applied to Plaintiff's political speech.  Plaintiff's Motion for Summary Judgment is accordingly granted as to the constitutionality of the 2011 and 2013 Laws.

## III.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted in full, and Defendant's Motion for Summary Judgment is granted in part and denied in part.  The 2014 Law's restrictions on political signs are unconstitutional, and the enforcement of its restrictions on such signs is enjoined.  The 2011 and 2013 Laws were also unconstitutional insofar as they regulated political signs, and the amount of damages to which Plaintiff is entitled from her facial and as-applied challenges will be determined by inquest.  The Clerk of the Court is respectfully directed to terminate the pending Motions.  (Dkt. Nos. 21, 30, 41, 46).

SO ORDERED.

Dated:          September 30, 2015
                White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

35